UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SCOTT D. SWAIN,
              Plaintiff,
    v.                               Case No. 3:04CV1020(SRU)

JOHN DOE, ET AL.,
              Defendants.

## RULING ON PENDING MOTIONS

The plaintiff, Scott D. Swain, commenced this civil rights action pro se and in forma pauperis.  Swain sues Seneca Patterson, a licensed clinical social worker stationed at MacDougall-Walker Correctional Institution; Theresa Lantz, the Commissioner of the State of Connecticut Department of Correction; Thomas Karanda, a Detective in the Firearms Unit of the Connecticut State Police; Karen O'Connor, a Trooper with the Connecticut State Police; and Gilbert O'Brien, a detective in the Major Crimes Division in the Eastern District of the Connecticut State Police.

The amended complaint asserts claims that; (1) defendants O'Connor, Karanda and O'Brien falsely arrested Swain in 2002 and 2003 on charges of sexual assault failure to register as a sexual offender; (2) defendant Patterson improperly diagnosed Swain as suffering from a mental health condition and improperly referenced pending criminal charges and past convictions in Swain's medical file; and (3) defendant Lantz is responsible for the excessive delay in Swain's receipt of a cane and a knee brace, his exposure to the Hepatitis B and C viruses, and the failure of medical personnel to timely test and begin treatment for those viruses.  Pending are defendants' motion for summary judgment and plaintiff's motion for reconsideration.

## I.      Motion for Reconsideration

Swain seeks reconsideration of my ruling denying his motion for leave to file a third

amended complaint.  The standard for granting a motion for reconsideration is strict.  See

Schrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion generally will be

denied unless the "moving party can point to controlling decisions or data that the court

overlooked – matters, in other words, that might reasonably be expected to alter the conclusion

reached by the court."  Id.  The function of a motion for reconsideration thus is to present the

court with an opportunity to correct "manifest errors of law or fact or to consider newly

discovered evidence . . . ."  LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn.

1993) (quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987)),

aff'd, 33 F.3d 50 (2d Cir. 1994).

Swain does not identify any facts or law that I overlooked in ruling on his motion for

leave to file a third amended complaint.  Accordingly, Swain's motion for reconsideration is

granted.  Upon reconsideration, however, I affirm my ruling denying Swain's motion to amend.

## II.     Motion for Summary Judgment

### A.      Standard of Review

Summary judgment is appropriate when the evidence demonstrates that "there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)

(plaintiff must present affirmative evidence in order to defeat a properly supported motion for

summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the

light most favorable to the nonmoving party and must resolve all ambiguities and draw all

reasonable inferences against the moving party.  Anderson, 477 U.S. at 255; Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398

U.S. 144, 158-59 (1970); see also Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d

Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the

nonmoving party").  When a motion for summary judgment is properly supported by

documentary and testimonial evidence, however, the nonmoving party may not rest upon the

mere allegations or denials of his pleadings, but must present significant probative evidence to

establish a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986);

Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

   "Only when reasonable minds could not differ as to the import of the evidence is

summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991); see also

Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary

judgment may be granted.  Anderson, 477 U.S. at 249-50.

> The mere existence of some alleged factual dispute between the parties will
> not defeat an otherwise properly supported motion for summary judgment;
> the requirement is that there be no genuine issue of material fact.  As to
> materiality, the substantive law will identify which facts are material.  Only
> disputes over facts that might affect the outcome of the suit under the
> governing law will properly preclude the entry of summary judgment.
> Factual disputes that are irrelevant or unnecessary will not be counted.

Id. at 247-48.  To present a "genuine" issue of material fact, there must be contradictory evidence

"such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.

   If the nonmoving party has failed to make a sufficient showing on an essential element of

3

his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate.  Celotex, 477 U.S. at 322.  In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 322-23; accord Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim).  In short, if there is no genuine issue of material fact, summary judgment may enter.  Celotex, 477 U.S. at 323.

**B.    Facts**

On September 17, 1984, a jury in the Superior Court in Massachusetts found Swain guilty of aggravated rape and assault and battery by means of a dangerous weapon.  On May 10, 1985, a judge sentenced Swain to seven-and-one-half to ten years of imprisonment.  See Swain v. Superintendent, Old Colony Corr. Ctr., 29 Mass. App. Ct. 918, 556 N.E. 2d 1061, cert. denied, 29 Mass. 1104, 562 N.E.2d 90 (1990).  On November 4, 1985, a Massachusetts Appeals Court dismissed for lack of prosecution Swains's appeal of his conviction.

On August 23, 2002, Trooper Karen O'Connor signed an affidavit in support of a warrant for Swain's arrest for failing to register as a sex offender in violation of Connecticut General Statutes § 54-253.  Superior Court Judge William Foley signed the arrest warrant the same day.  On August 26, 2002, Trooper Stevens arrested Swain in Chaplin, Connecticut.

In 2002, Trooper Thomas Karanda was assigned to the Sex Offender Registry of the Connecticut State Police.  O'Connor informed Karanda that Swain was under investigation for sexual assault and asked whether Swain had been convicted of a sexual offense in another state

and whether he had registered as a sex offender in Connecticut.  Karanda investigated Swain's background and determined that he was a convicted sex offender in Massachusetts and explained to O'Connor that he believed Swain was required to register as sex offender in Connecticut upon moving to Connecticut.  Karanda did not sign or help prepare the arrest warrant affidavits in support of any of the warrants for Swain's arrests in 2002 or 2003.

On June 16, 2003, Trooper Gilbert O'Brien signed an affidavit in support of a warrant for Swain's arrest for sexual assault on an individual known as "B" in Windham, Connecticut on August 5, 2001, in violation of Connecticut General Statutes § 53a-70.  Judge Foley signed the arrest warrant on July 8, 2003.

On August 27, 2002, O'Brien signed an affidavit in support of a warrant for Swain's arrest for sexual assault on a prostitute known as "P" in Windham, Connecticut on July 16, 2002.  A Superior Court Judge signed the arrest warrant on the same day.

On August 28, 2002, O'Connor signed an affidavit in support of a warrant for Swain's arrest for sexual assault on a individual known as "C" in Chaplin, Connecticut between the dates of June 15 and July 4, 2002.  A Superior Court Judge signed the arrest warrant on August 30, 2002.  The Assistant State's Attorney later decided to nolle that case.

On September 9, 2002, O'Connor signed an affidavit in support of a warrant for Swain's arrest for sexual assault on an individual known as "L" in Mansfield, Connecticut on July 4, 2002.  A Superior Court Judge signed the arrest warrant on September 19, 2002.  A detective arrested Swain in early October 2002.

On January 11, 2006, in the Connecticut Superior Court for the Judicial District of Rockville at Tolland, Swain pleaded guilty to two counts of unlawful restraint.  The judge

sentenced Swain to a total effective sentence of ten years of imprisonment.

The case charging Swain with sexual assault on "B" was consolidated with the case charging Swain with sexual assault on "P" and both cases went to trial on August 17, 2004. On August 22, 2004, in the Connecticut Superior Court for the Judicial District of Windham, a jury found the Swain guilty of sexual assault in the first degree, attempt to commit sexual assault in the first degree, kidnaping in the first degree and threatening in the second degree. A judge sentenced Swain to total effective sentence of twenty-five years of imprisonment. On May 22, 2007, the Connecticut Appellate Court affirmed Swain's conviction. See State v. Swain, 101 Conn. App. 253, 921 A.2d 712, cert. denied, 283 Conn. 909, 928 A.2d 539 (2007).

On March 31, 2006, in the Connecticut Superior Court for the Judicial District of Windham, Swain pleaded guilty to failing to register as a sex offender and was sentenced to a total effective sentence of ten years to be served concurrently with the sentence he was then serving. Swain has been incarcerated in a Connecticut Department of Correction facility since August 27, 2002.

C.    **Discussion**

Defendants argue that: (1) Swain may not maintain an action for false arrest or malicious prosecution regarding crimes for which he was convicted; (2) Commissioner Lantz was not involved in the medical treatment of Swain; and (3) Social Worker Patterson did not violate Swain's right to privacy in his medical records. Swain argues that he has submitted evidence to support all of his claims and they should proceed to trial.

1.    **Claims Against Karanda, O'Brien and O'Connor**

Swain asserts that defendants Karanda, O'Brien and O'Connor coerced the victims to

6

name him as the man who sexually assaulted them, continued to question him in violation of his

Miranda rights, forged the statement of victim "P," showed the victims suggestive photo arrays,

perjured themselves in the arrest warrant affidavits and sought his arrest for a crime they knew he

had not committed in retaliation for past allegations he had made against a relative of O'Brien's.

Defendants Karanda, O'Brien and O'Connor argue that the claims against them for falsely

arresting Swain for the sexual assaults of victims known as "B," "P" and "L" and for failing to

register as a sex offender are not cognizable because Swain was convicted of the crimes for

which he was arrested.  They are correct.

      "Claims for false arrest or malicious prosecution, brought under [section] 1983 to

vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are

'substantially the same' as claims for false arrest or malicious prosecution under state law."

Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  Under section 1983 , the elements of

claims for false arrest and malicious prosecution are controlled by state law.  See  Davis v.

Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir. 1994).

Under both Connecticut law and section 1983, a plaintiff must allege that the prosecution

terminated in his or her favor to state a claim of malicious prosecution or false arrest.  See

Roesch v. Otarola, 980 F.2d 850, 853-54 (2d Cir. 1992) (holding that under Connecticut law, a

false arrest plaintiff must show that the charges terminated favorably); Frey v. Maloney, 476 F.

Supp. 2d 141, 147 (D. Conn. 2007) ("[t]o prevail on a claim of malicious prosecution, a plaintiff

must prove that . . . 'the criminal proceedings have terminated'" in his or her favor) (citations

omitted).

      Swain provides evidence that he was convicted in the cases charging him with the sexual

7

assaults of victims "B," "P" and "L" and as well as the case charging him with failing to register

as a sex offender.   (See Pl.'s Local Rule 56(a)2 Statement, Ex. C.)  Because these criminal cases

did not terminate in his favor, Swain's claims of false arrest fail to state a claim upon which

relief may be granted.  The motion for summary judgment is granted as to those claims.[1]

### 2.     Claims Against Lantz

Swain asserts that Lantz supervised prison medical personnel who failed to provide him

with a cane for two years and a knee brace for his left knee for three years, negligently drew his

blood using a dirty needle that caused him to become infected with Hepatitis B and C and

subsequently failed to timely test and begin treatment for these infections.  Defendant Lantz

---

[1]  On September 24, 2008, the court clarified the claims raised by Swain in the amended complaint.  Those claims did not include a claim that the defendants falsely arrested Swain for the sexual assault of victim "C."  Thus, it is not necessary to address that claim here.  Even if the amended complaint could be read to assert that claim, it would not be cognizable.

As stated above, Connecticut law defines false arrest or false imprisonment as "the unlawful restraint by one person of the physical liberty of another."  Russo, 479 F.3d at 204.  Thus, Swain "must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will" to prevail on a false arrest claim.  Berry v. Loiseau, 223 Conn. 786, 820 (1992) (internal quotation marks omitted).  A plaintiff does not state a claim for either false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody or incarcerated on other charges because there is no deprivation of his or her liberty interests.  See Holmes v. Grant, No. 03 Civ. 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. Mar. 31, 2006) ("[a]n inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses"); Goncalves v. Reynolds, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (noting that plaintiff could not state a claim for false arrest because, at the time of his arrest, he was already detained pursuant to earlier charges and based upon his prior convictions).

Swain's arrest pertaining to the sexual assault on victim "C" occurred on or after August 30, 2002, the day a Superior Court Judge signed the arrest warrant. At the time, however, Swain was already in custody pursuant to his arrest on August 26, 2002 for failing to register as a sex offender.  Swain has remained incarcerated at a Connecticut prison facility since that time.  Because Swain was already incarcerated at the time of his arrest for the sexual assault of victim "C," and remained in custody until and after the charges were nolled, Swain's liberty was not restrained by the defendants and his false arrest claim fails.

argues that Swain has not alleged her personal involvement in the denial or delay in medical treatment.

In an action filed pursuant to 42 U.S.C. § 1983, liability is imposed only on the official causing a constitutional violation.  It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in her individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions that are alleged to have caused the constitutional deprivation.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Lantz, the Commissioner of the Department of Correction, is a supervisory official. Because the doctrine of respondeat superior is inapplicable in section 1983 cases, see Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999), supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort.  Swain may establish supervisory liability by demonstrating that the defendant: (1) actually and directly participated in the alleged acts; (2) failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) was grossly negligent in her supervision of the correctional officers who committed the constitutional violation; or (5) was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  See Iqbal v. Hasty, 490 F.3d 143, 152 (2nd Cir. 2007), rev'd on other grounds sub nom., Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  In addition, Swain must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

Swain claims Lantz is responsible for the health care professionals who are supposed to provide him with medical treatment and care.  He alleges no facts describing any actions or omissions of Lantz regarding his medical treatment or that he made Lantz aware of the alleged improper diagnosis and treatment for Hepatitis B and C and the delay in receiving a cane and knee brace.  Because Swain has provided no evidence of the involvement by Lantz in the denial and delay in his medical treatment, the motion for summary judgment is granted with respect to the claims for monetary damages in her individual capacity.

To the extent that Swain asserts claims for monetary damages against Lantz in her official capacity, those claims are barred by sovereign immunity.  The Eleventh Amendment provides immunity from suit for monetary damages for the state and state officials sued in their official capacities.  Kentucky v. Graham, 473 U.S. 159 (1985).  Although the state can waive its immunity from suit, Swain has presented no evidence suggesting that the State of Connecticut has done so in this case.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974) (holding that state may explicitly waive Eleventh Amendment immunity).

Lantz is the Commissioner of the Connecticut Department of Correction.  Thus, she is immune from claims for damages in her official capacity.  The claim for damages against Lantz in her official capacity is dismissed.  See 28 U.S.C. § 1915(e)(2)(B)(ii) (directing the court to dismiss at any time a claim upon which relief may not be granted).

### 3.      Claims Against Patterson

Swain claims that Patterson improperly diagnosed him as suffering from a mental health condition and improperly referred to pending criminal charges and past convictions in his medical and mental health files.  Patterson argues that she was qualified to diagnose Swain upon

his admission to MacDougall-Walker Correctional Institution ("MacDougall-Walker") and that she did not violate his privacy by including facts regarding past convictions.

Patterson has filed an affidavit in which she states that in 2003, when Swain arrived at Walker, she was a clinical social worker licensed to practice in Connecticut and was authorized to diagnose a patient's mental health.  She avers that she saw Swain on February 22 and 27, 2003 and also completed a Mental Status Evaluation on February 27, 2003.  The entry in Swain's medical records for February 22, 2003, includes a statement that Swain told her that he had been committed to a mental health hospital in Massachusetts in the 1980s for evaluation in connection with sexual assault charges pending against him at that time.  The entry also includes a reference to ruling out bipolar disorder.  The entry for February 27, 2003 includes a statement that Swain had been charged with sexual assault in two different cases in state court and the judge had imposed a high bond amount in both cases.  The Mental Status Evaluation completed on the same date included a reference to Swain's confinement and release from a Massachusetts mental health hospital in the 1980s.

Swain offers no evidence to contradict Patterson's affidavit regarding her authority, as a licensed clinical social worker, to diagnose his mental status during her evaluation of him on February 22 and 27, 2003.   See Conn. Gen. Stat. § 20-195m(1) and (4) ("Clinical social work means the application, by persons trained in social work, of established principles of psychosocial development, behavior, . . . interpersonal relationships and environmental stress to the evaluation, assessment, diagnosis and treatment of . . . mental, emotional, behavioral, developmental and addictive disorders, of individuals . . . [and] includes . . . mental health consultation.").  Furthermore, any claim that Patterson improperly diagnosed Swain would

11

constitute negligence or malpractice at most and would not state a claim of deliberate

indifference to his mental health needs.   See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir.

2003) (holding that mere negligence will not support a section 1983 claim because "the Eighth

Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state

tort law.").

Swain asserts that the information set forth in the mental health records by Patterson

regarding his prior confinement in a mental health hospital was inaccurate.  To the extent that the

information in the medical records may be inaccurate, Swain has failed to provide evidence to

show that Patterson intentionally placed such information in the file.  Thus, the claim is at most a

negligence claim that is not actionable under section 1983.

Swain claims that defendant Patterson impermissibly included confidential information

about his prior mental health treatment and convictions and pending criminal charges in both his

medical file and his mental health file and that this information led to a delay in the diagnosis and

treatment of his various medical conditions, including Hepatitis B and C.  Patterson avers that an

inmate's mental health records and medical records are maintained in one health care file.  Swain

has failed to provide evidence that the Department of Correction Administrative Directives

require that medical staff maintain two separate files, one containing medical information and the

other containing mental health information.  In fact, the Administrative Directive in effect in

2003 confirms that Department of Correction medical personnel were required to maintain one

file that contained all health services treatment information, including mental health treatment.

See State of Connecticut Administrative Directive 8.7(7) (effective August 16, 1999).

The Supreme Court has held that "there exists in the United States Constitution a right to

privacy protecting 'the individual interest in avoiding disclosure of personal matters.'" Doe v.

City of New York, 15 F.3d 264, 267 (2d Cir.1994) (quoting Whalen v. Roe, 429 U.S. 589, 599

(1977)).  It is well-settled, however, that any constitutional right to privacy does not apply to

matters of public record.  See Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 494-95 (1975)

(stating that "even the prevailing law of invasion of privacy generally recognizes that the interests

in privacy fade when the information involved already appears on the public record"); Connick v.

Myers, 461 U.S. 138, 143 n.5 (1983) (citing Cox for the proposition that an "action for invasion

of privacy cannot be maintained when the subject-matter of the publicity is matter of public

record."); Doe v. City of New York, 15 F.3d 264, 268 (2d Cir.1994) ("Certainly, there is no

question that an individual cannot expect to have a constitutionally protected privacy interest in

matters of public record."); Cline v. Rogers, 87 F.3d 176, 179 (6th Cir.1996) (holding that "there

is no constitutional right to privacy in one's criminal record" because "arrest and conviction

information are matters of public record"); Rush v. Artuz, 00 Civ. 3436(LMM), 2004 WL

1770064, at *11 (S.D.N.Y. Aug. 6, 2004) ("prisoners cannot expect their constitutional right to

privacy to protect them against the disclosure of medical information that had already previously

been disclosed to the public") (collecting cases).

Swain's Massachusetts conviction and sentence were a matter of public record in

February 2003.  See Swain v. Superintendent, Old Colony Correctional Center, 29 Mass. App.

Ct. 918, 556 N.E. 2d 1061, cert. denied, 29 Mass. 1104, 562 N.E.2d 90 (1990).  Likewise, the

status of criminal charges pending against Swain in Connecticut in February 2003 could have

been verified at the State of Connecticut Judicial Branch website, www.jud2.ct.gov/crdockets,

that provides information regarding pending criminal cases.  Furthermore, Swain provides no

13

proof that the information included in his medical records by Patterson pertaining to past convictions, mental health treatment and pending criminal charges had any impact on future treatment of his various medical conditions by other Department of Correction medical staff. Swain has failed to state a claim of violation of privacy with respect to Patterson's inclusion of information related to his prior conviction and sentence and pending criminal charges in both his medical file and his mental health file.

Swain also argues that Patterson's placement of mental health information in his medical file violated the Health Insurance Portability and Accountability Act ("HIPAA").  Swain cannot bring a private action to enforce the provisions of HIPAA.  See 42 U.S.C. §§ 1320d-5 (enforcement limited Secretary of Health and Human Services);  Ames v. Group Health Inc., 553 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information"); Rzayeva v. United States, 492 F. Supp. 2d 60, 83 (D. Conn. 2007) ("HIPAA, which regulates the privacy of medical records, provides no private right of action, and enforcement of HIPAA is reserved exclusively to the Secretary of Health and Human Services.") (citations omitted).

For the foregoing reasons, the motion for summary judgment is granted with respect to all claims against Patterson.

**III.**   **Conclusion**

Swain's Motion for Reconsideration [**doc. # 99**] is **GRANTED**, but the relief requested in that motion is **DENIED**.  Defendants' Motion for Summary Judgment [**doc. #62**] is **GRANTED**.  The claim for damages against Lantz in her official capacity is dismissed pursuant 28 U.S.C. § 1915(e)(2)(B)(ii).  I decline to exercise supplemental jurisdiction over any pendent

state law claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966) (holding that,

where all federal claims have been dismissed before trial, pendent state claims should be

dismissed without prejudice and left for resolution by the state courts).  The Clerk is directed to

enter judgment for the defendants and close this case.

   **SO ORDERED** this 24th day of September 2009, at Bridgeport, Connecticut.


          /s/ Stefan R. Underhill    
            Stefan R. Underhill
            United States District Judge